**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

SEDREICK MOORE,

    Plaintiff,

    v.

JAMES PEARSON, *et al.,*

    Defendants.

:
:
:
:
:
:
:
:
:
:
:

CASE NO.: 7:25-CV-00133 (WLS)

## ORDER

This case arises from the wrongful conviction of Sedrick Moore for rape. Moore spent over twenty-three years in prison before the state court granted his Extraordinary Motion for New Trial, finding that a 2018 DNA test excluded Moore as a possible DNA match for the rapist and that witness Tyrone White lied multiple times during the investigation. Moore now sues James Pearson, a GBI DNA analyst, the GBI, officers James Harshbarger, Joseph Smith, and their estates, officer Tommy Raybon, the City of Moultrie, and Colquitt County.

Defendant Smith and his estate move for a judgment on the pleadings. (Docs. 44). After review, the motion for a judgment on the pleadings (Doc. 44) is granted.

## I.    RELEVANT PROCEDURAL BACKGROUND

Plaintiff Sedrick Moore sued Pearson and the GBI in the Northern District of Georgia under 42 U.S.C. § 1983, *Monell*, and Georgia state law for their role in the wrongful conviction of Moore. (Doc. 17). Smith and his estate move for a judgment on the pleadings (Doc. 44), Plaintiff responded (Doc. 46), and Defendants replied (Doc. 47). The Northern District of Georgia Court transferred the case to this Court on October 20, 2025. (Doc. 48). Because the motion for a judgment on the pleadings is fully briefed, it is ripe for ruling.

## II.    MOTION FOR A JUDGMENT ON THE PLEADINGS

Defendant moves under Federal Rules of Civil Procedure 12(c) for a judgment on the pleadings. After discussing the standard of review and the allegations, the Court considers Defendant's arguments in turn. Motions for judgment on the pleadings are allowed by Federal Rule of Civil Procedure 12(c) and are subject to the same standard of review as motions to

1

dismiss under Rule 12(b)(6). *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002). The Court, therefore, applies the following standard of review applied to Rule 12(b)(6) motions.

## A. Standard of Review

### 1. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Priv. Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). The plausibility standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice;" rather, a complaint must make plausible, factual assertions that allow the Court to draw the required connections from the alleged harm and the requested relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

The Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). In evaluating the sufficiency of the plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but [is] not required to draw plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). The Supreme Court instructs that while on a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 555, for the

2

proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint). In addition to considering the four corners of a complaint, a district court may also consider an extrinsic document only if it is central to the plaintiff's claim and its authenticity has not been challenged. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC.*, 600 F.3d 1334, 1337 (11th Cir. 2010).

## B. The Allegations

With these principles in mind, the Court turns to the allegations. On February 15, 1993, three men raped Pearlie McGee. (Doc. 17 ¶ 24). The investigation was led by Moultrie Police Department (MPD) Investigators and Police Officers, but involved the GBI, which performed DNA analysis for the case. (*Id.* ¶ 28). Defendant Harshbarger was the lead MPD investigator, Defendants Raybon and Smith[1] were MPD officers who assisted Harshbarger in the investigation, and Defendant Pearson was the GBI DNA analysis supervisor. (*Id.* ¶¶ 29-31).

Two days after being raped, McGee identified Tyrone White and Derrick Smith[2] using a yearbook. (*Id.* ¶ 33). She never identified Sedrick Moore. (*Id.*) There was no physical evidence connecting Moore to the crime. (*Id.* ¶ 34). The Law Enforcement Defendants arrested and questioned White, who agreed to testify against other suspects in exchange for certain other charges being dropped. (*Id.* ¶ 35). Defendant Harshbarger wrote down that he agreed to suggest to his supervisor or DA that White should have charges dropped in exchange for testimony against Kerry Robsinon and Sedrick Moore. (*Id.* ¶ 37). A supervisor or policymaker at the City of Moultrie would have had actual knowledge about the plea deal, because the Law Enforcement Defendants lacked the authority to grant a plea deal on their own. (*Id.* ¶ 70). White named Moore and Kerry Robinson[3] as his accomplices, claiming that Derrick Smith, a man he was with before and after the crime, was not involved. (*Id.* ¶ 38). At trial, White contradicted McGee's testimony at least five

---

[1] Defendants Harshbarger, Raybon, and Smith are collectively referred to as the "Law Enforcement Defendants."

[2] Derrick Smith was arrested, placed in a juvenile facility, and ultimately let go. (*Id.* ¶ 39). Smith is related to Defendant Joseph Smith, one of the investigating police officers. (*Id.* ¶ 40). Smith's DNA was never tested. (*Id.* ¶ 41).

[3] White initially named Kerry Lewis but corrected himself and named Kerry Robinson and Moore. (*Id.* ¶ 68).

times. (*Id.* ¶ 77). In exchange for his testimony, White's sentences ran concurrently, significantly reducing his prison time. (*Id.* ¶ 71).

A sexual assault kit was performed on McGee and DNA belonging to people other than her was found. (*Id.* ¶ 44). The Law Enforcement Defendants collected clothing from the crime scene; the GBI tested it, and found seminal fluid containing White's DNA. (*Id.* ¶¶ 45-46). From the sexual assault kit, the GBI DNA analysts collected thirteen alleles, eleven of which matched White's DNA. (*Id.* ¶¶ 48-49). Defendant Pearson compared the two unaccounted for alleles to Moore. (*Id.* ¶ 51). The results were "inconclusive," meaning Moore's DNA did not match the DNA collected from the sexual assault kit. (*Id.*) Despite this, Defendant Pearson testified at trial in the presence of the jury that Moore's DNA matched the sexual assault kit DNA. (*Id.* ¶ 52). Despite inconclusive DNA testing results, Pearson further testified that "[a]dditional alleles that were present in the vaginal cervical swabs matched them as well." (*Id.* ¶¶ 53-54).

In 2002, the GBI followed a policy directing agents to use "suspect-centric" language, which means that analysis will favor not excluding suspects when the DNA result is inconclusive. (*Id.* ¶ 58). In practice, this meant that when a DNA test is either unclear or inconclusive, instead of excluding a suspect-defendant, the GBI would mark the result as "non-exclusion," ensuring the suspect-defendant is still included in the DNA results. (*Id.* ¶ 59). This policy allowed GBI analysts, such as Pearson, to use the terms "non-excluded" from DNA evidence and "matched" the DNA evidence interchangeably. (*Id.* ¶ 60). GBI policymakers and final decisionmakers had actual and constructive knowledge of the policy and its effects. (*Id.* ¶ 63).

Defendant Harshbarger and the other Law Enforcement Defendants fabricated a witness statement identifying Moore coming from McGee's house on the night of the rape and read it into evidence before the jury. (*Id.* ¶¶ 86-92). Moore was ultimately arrested six years after the rape, found guilty at trial where the Law Enforcement Defendants and Pearson presented fabricated and misleading evidence, and sentenced to seventy-five years in prison. (*Id.* ¶ 97).

## C. Law & Analysis

### 1. Claims Against Smith

Turning to the merits, Defendant moves for a judgment on the pleadings, arguing that Georgia's statute of ultimate repose O.C.G.A. § 9-3-36 bars the claims. (Doc. 44 at 5). The statute requires that "[i]n no event may claims against a decedent's estate that arose before the

death of the decedent be brought more than six years after the date of the decedent's death." O.C.G.A. § 9-3-36(a). And the statute "is intended to create a six-year statute of ultimate repose and abrogation." O.C.G.A. § 9-3-36(b). Smith died on November 2, 2015 (Doc. 17 ¶ 21) and Plaintiff's claim accrued on May 12, 2023. (Doc. 46 at 7).

Defendant argues that once the six-year period has run, a plaintiff's claims are not actionable, even if they did not accrue until more than six years after the deceased defendant's death. (Doc. 44 at 5-6). Plaintiff disagrees, arguing that *because* his claim accrued after Smith's death, the statute of ultimate repose does not bar his claims. (Doc. 46 at 6). However, "[a] statute of ultimate repose delineates a time period in which a right may accrue. If the injury occurs outside that period, it is not actionable." *Simmons v. Sonyika*, 279 Ga. 378, 379 (2005), disapproved of on other grounds by *Golden v. Floyd Healthcare Mgmt., Inc.*, 319 Ga. 496 (2024) (quoting *Craven v. Lowndes County, Hosp. Auth.*, 263 Ga. 657, 660 (1993)). And "[a] statute of repose stands as an unyielding barrier to a plaintiff's right of action. The statute of repose is absolute." *Id.* (quoting *Wright v. Robinson*, 262 Ga. 844, 845 (1993)). Since Plaintiff's claims accrued more than six years after Smith's death, they are not actionable.

Plaintiff makes two key arguments. First, Plaintiff argues that O.C.G.A. § 9-3-92 tolls all actions against the estate until the estate is established. (Doc. 46 at 3). However, "by definition, a statute of ultimate repose cannot be tolled." *Simmons v. Sonyika*, 279 Ga. 378, 380 (2005) (quoting *Osburn v. Goldman*, 269 Ga.App. 303, (2004)) (cleaned up). The court in *Golden* later disapproved of the previous statement, noting "the legislature has tolled such statutes in the past" and the legislature may validly toll statutes of ultimate repose. *Golden v. Floyd Healthcare Mgmt., Inc.*, 319 Ga. 496, 502 (2024). Therefore, the question is whether the § 9-3-92 tolls the statute of ultimate repose.

While discussing *Simmons*, the court in *Golden* noted how § 9-3-92 affected a statute of repose enacted over one hundred years later: minimally. *Id.* at 502. "As a matter of statutory construction, OCGA § 9-3-92 referred to statutes of limitation and could not have contemplated a statute of repose that was enacted over 100 years later." *Id.* Therefore, the more recently adopted statute of repose carried greater weight than the preexisting unrepresented estate statute. *Id.* (citing *Simmons* 279 Ga. at 379). Here too, the statute of

5

ultimate repose came more than one hundred years after the tolling statute. Therefore, the Court looks to the text of § 9-3-36 to determine whether it may be tolled by § 9-3-92.

O.C.G.A. § 9-3-36 begins with an express limitation: "[i]n no event." This language contrasts with the statute of repose in *Golden*, where the statute contained language expressly contemplating tolling: "An authorized judicial official . . . is authorized to suspend, toll, extend, or otherwise grant relief from deadlines." O.C.G.A. § 38-3-62. In *Golden*, the later-enacted repose statute's language expressly contemplated tolling and resulted in the court permitting tolling under the text of the statute. 319 Ga. at 503. Meanwhile, the statute of repose in *Simmons* also began with "in no event." 279 Ga. at 378 (quoting OCGA § 9-3-71(b)). In that case and *Wright*, the "in no event" language meant "the legislature never intended for the unrepresented estate statute to overcome the subsequently enacted statute of repose." 279 Ga. at 379-380; *Wright v. Robinson*, 262 Ga. 844, 846 (1993). So too the Court now finds the Georgia legislature never intended for the unrepresented estate statute to overcome the subsequently enacted statute of ultimate repose. The "in no event" language in § 9-3-36 forbids tolling.

Second, Plaintiff attempts to create an issue of material fact by arguing that Smith's exact date of death is unconfirmed (Doc. 46 at 4), despite alleging a date of death in his amended complaint. (Doc. 17 at 6). Plaintiff argues Smith "Has Failed to Admit or Deny the True Date of Mr. Smith's Death, Creating a Material Factual Dispute." (*Id.*) Plaintiff then cites to *Perez v. Wells Fargo N.A.*, 774 F.3d 1329 (11th Cir. 2014) for the rule that "[i]f a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." But Smith answered the amended complaint and stated "[t]hese Defendants admit Joseph Smith died on November 2, 2015." (Doc. 24 ¶ 21). So there is no issue of fact regarding the date of Smith's death. Plaintiff alleged and Defendant agreed that Smith died on November 2, 2015. (Docs. 17 at 6 & 24 ¶ 21). Perhaps Plaintiff is referring to Smith's statement that he is "without knowledge or information sufficient to form a belief as to the truth of the remaining factual allegations contained in Paragraph 21." (*Id.*) But the remainder of the facts alleged in paragraphs twenty-one concerned whether Smith had an estate set up. That fact is not material as to the statute of ultimate repose. The existence of an estate does not change that more than six years passed between Smith's death and the accrual of the claim and it being brought. So that fact is not material as to the instant motion.

6

## III.   CONCLUSION

In sum, under O.C.G.A. § 9-3-36 Plaintiff cannot sue Smith or his estate because more than six years passed between Smith's death and the accrual of the claim and it being brought.

Hence Defendants' Motion for Judgment on the Pleadings (Doc. 44) is **GRANTED**. Plaintiff's claims against Smith and his estate are **DISMISSED**, with prejudice. The lawsuit remains pending as to all of Moore's remaining claims for the purposes of this Order.

**SO ORDERED**, this 6th day of February 2026.

/s/ **W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATESDISTRICT COURT**