**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

SEDREICK MOORE,

    Plaintiff,

    v.

JAMES PEARSON, *et al.,*

    Defendants.

CASE NO.: 7:25-CV-00133 (WLS)

## ORDER

This case arises from the wrongful conviction of Sedrick Moore for rape. Moore spent over twenty-three years in prison before the state court granted his Extraordinary Motion for New Trial, finding that a 2018 DNA test excluded Moore as a possible DNA match for the rapist and that witness Tyrone White lied multiple times during the investigation. Moore now sues James Pearson, a GBI DNA analyst, the GBI, officers James Harshbarger, Joseph Smith, and their estates, officer Tommy Raybon, the City of Moultrie, and Colquitt County.

Defendants Pearson and the GBI move to dismiss the lawsuit. (Docs. 29). After review, the Motion to Dismiss (Doc. 29) is granted in part, and denied in part. Because of state sovereign immunity and Plaintiff's failure to comply with the procedural requirements of the Georgia Tort Claims Act, all claims against GBI and Pearson are dismissed, excluding Plaintiff's federal claims against Pearson, except for those claims arising out of Pearson's trial testimony.

## I.    RELEVANT PROCEDURAL BACKGROUND

Plaintiff Sedrick Moore sued Pearson and the GBI in the Northern District of Georgia under 42 U.S.C. § 1983, *Monell*, and Georgia state law for their role in the wrongful conviction of Moore. (Doc. 17). Pearson and the GBI moved to dismiss (Doc. 29), Plaintiff responded (Doc. 35), and Defendants replied (Doc. 43). The Northern District of Georgia Court transferred the case to this Court on October 20, 2025. (Doc. 48). Because the Motion to Dismiss is fully briefed, it is ripe for ruling.

1

## II.   MOTION TO DISMISS

Defendants move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's Complaint (Doc. 1). After discussing the standard of review and the allegations, the Court considers Defendants' arguments in turn.

### A. Standard of Review

*1. Rule 12(b)(6) Standard*

Fed. R. Civ. P. 12(b)(6) permits a party to move to dismiss a claim if a complaint fails to state a claim upon which relief can be granted. The Court should not grant a Rule 12(b)(6) motion to dismiss unless a plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[I]f the factual allegations are not 'enough to raise a right to relief above the speculative level[,]'" the Court should dismiss the complaint. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). In other words, the allegations "must possess enough heft to set forth a plausible entitlement to relief." *Id.* (quotation marks omitted).

The Court conducts its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The Court "make[s] reasonable inferences in plaintiff's favor, but [need not] draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quotation marks and citation omitted), *abrogated on other grounds by Mohamad v. Pal. Auth.*, 566 U.S. 449 (2012). Even though the Court accepts all allegations in a complaint as true, this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B. The Allegations

With these principles in mind, the Court turns to the allegations. On February 15, 1993, three men raped Pearlie McGee. (Doc. 17 ¶ 24). The investigation was led by Moultrie Police Department (MPD) Investigators and Police Officers, but involved the GBI, which performed DNA analysis for the case. (*Id.* ¶ 28). Defendant Harshbarger was the lead MPD investigator,

2

Defendants Raybon and Smith[1] were MPD officers who assisted Harshbarger in the investigation, and Defendant Pearson was the GBI DNA analysis supervisor. (*Id.* ¶¶ 29-31).

Two days after being raped, McGee identified Tyrone White and Derrick Smith[2] using a yearbook. (*Id.* ¶ 33). She never identified Sedrick Moore. (*Id.*) There was no physical evidence connecting Moore to the crime. (*Id.* ¶ 34). The Law Enforcement Defendants arrested and questioned White, who agreed to testify against other suspects in exchange for certain other charges being dropped. (*Id.* ¶ 35). Defendant Harshbarger wrote down that he agreed to suggest to his supervisor or DA that White should have charges dropped in exchange for testimony against Kerry Robsinon and Sedrick Moore. (*Id.* ¶ 37). A supervisor or policymaker at the City of Moultrie would have had actual knowledge about the plea deal, because the Law Enforcement Defendants lacked the authority to grant a plea deal on their own. (*Id.* ¶ 70). White named Moore and Kerry Robinson[3] as his accomplices, claiming that Derrick Smith, a man he was with before and after the crime, was not involved. (*Id.* ¶ 38). At trial, White contradicted McGee's testimony at least five times. (*Id.* ¶ 77). In exchange for his testimony, White's sentences ran concurrently, significantly reducing his prison time. (*Id.* ¶ 71).

A sexual assault kit was performed on McGee and DNA belonging to people other than her was found. (*Id.* ¶ 44). The Law Enforcement Defendants collected clothing from the crime scene; the GBI tested it, and found seminal fluid containing White's DNA. (*Id.* ¶¶ 45-46). From the sexual assault kit, the GBI DNA analysts collected thirteen alleles, eleven of which matched White's DNA. (*Id.* ¶¶ 48-49). Defendant Pearson compared the two unaccounted for alleles to Moore. (*Id.* ¶ 51). The results were "inconclusive," meaning Moore's DNA did not match the DNA collected from the sexual assault kit. (*Id.*) Despite this, Defendant Pearson testified at trial in the presence of the jury that Moore's DNA matched the sexual assault kit DNA. (*Id.* ¶ 52).

---

[1] Defendants Harshbarger, Raybon, and Smith are collectively referred to as the "Law Enforcement Defendants."

[2] Derrick Smith was arrested, placed in a juvenile facility, and ultimately let go. (*Id.* ¶ 39). Smith is related to Defendant Joseph Smith, one of the investigating police officers. (*Id.* ¶ 40). Smith's DNA was never tested. (*Id.* ¶ 41).

[3] White initially named Kerry Lewis but corrected himself and named Kerry Robinson and Moore. (*Id.* ¶ 68).

3

Despite inconclusive DNA testing results, Pearson further testified that "[a]dditional alleles that were present in the vaginal cervical swabs matched them as well." (*Id.* ¶¶ 53-54).

In 2002, the GBI followed a policy directing agents to use "suspect-centric" language, which means that analysis will favor not excluding suspects when the DNA result is inconclusive. (*Id.* ¶ 58). In practice, this meant that when a DNA test is either unclear or inconclusive, instead of excluding a suspect-defendant, the GBI would mark the result as "non-exclusion," ensuring the suspect-defendant is still included in the DNA results. (*Id.* ¶ 59). This policy allowed GBI analysts, such as Pearson, to use the terms "non-excluded" from DNA evidence and "matched" the DNA evidence interchangeably. (*Id.* ¶ 60). GBI policymakers and final decisionmakers had actual and constructive knowledge of the policy and its effects. (*Id.* ¶ 63).

Defendant Harshbarger and the other Law Enforcement Defendants fabricated a witness statement identifying Moore coming from McGee's house on the night of the rape and read it into evidence before the jury. (*Id.* ¶¶ 86-92). Moore was ultimately arrested six years after the rape, found guilty at trial where the Law Enforcement Defendants and Pearson presented fabricated and misleading evidence, and sentenced to seventy-five years in prison. (*Id.* ¶ 97).

## C. Law & Analysis

### 1. *Claims Against GBI*

Turning to the merits, Defendants move to dismiss Plaintiff's claims against GBI, asserting sovereign immunity. (Doc. 29-1 at 5). The Eleventh Amendment bars suits against a state by that state's own citizens. *Presnell v. Paulding Cnty., Ga.*, 454 F. App'x 763, 766 (11th Cir. 2011). "A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Va. Office for Prot. & Advocacy v. Stewart,* 131 S.Ct. 1632, 1638 (2011).

"Section 1983 'creates a species of tort liability that on its face admits of no immunities.'" *Wyatt v. Cole*, 504 U.S. 158 (1992) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). In this way and with certain limitations, § 1983 validly abrogates state sovereign immunity. One limitation is that certain government officials still receive absolute or qualified immunity from suit based on the tradition of immunity at common law. *See Id.* And "Congress, in passing § 1983, did not intend to override the immunity guaranteed to the states by the

4

Eleventh Amendment." *Robinson v. Ga. Dep't of Transp.,* 966 F.2d 637, 640 (11th Cir.1992). Therefore, Moore can only sue the GBI in federal court if Georgia has waived its sovereign immunity. *See Presnell v. Paulding Cnty., Ga.*, 454 F. App'x 763, 766 (11th Cir. 2011).

GBI maintains that it can be sued under neither § 1983 nor *Monell.* Moore concedes that state agencies are not "persons" suable under § 1983. *Will v. Michigan Dpt. Of State Police*, 491 U.S. 58 (1989). And Moore makes compelling public policy arguments against granting the GBI sovereign immunity under § 1983. (Doc. 35 at 5). Indeed, "[t]he GBI maintained a policy that was a blatant violation of constitutional rights" and "[w]ithout § 1983 actions, the GBI is free to violate the constitutional rights of the accused while maintaining more power than any local police agency within the state." (*Id.* at 5-6). However, "determination of absolute immunity under § 1983 is not a policy determination, but involves a historical exercise." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999). For better or worse, the Court is not a policymaker. Plaintiff does not identify any waiver of state sovereign immunity as to the GBI. Absent a waiver of sovereign immunity, the GBI cannot be sued under § 1983. Plaintiff's federal law claims against the GBI are **DISMISSED** without prejudice.

*2. Individual-Capacity Claims*

Defendants also move to dismiss Plaintiff's individual-capacity claims alleged against Pearson. (Doc. 29-1 at 8). Defendants assert that claims against Pearson are barred by both absolute immunity and sovereign immunity. Indeed, absolute immunity bars some of Plaintiff's claims. Sovereign immunity bars none.

Pearson first asserts absolute immunity for his trial testimony. (Doc. 29-1 at 8). "Witnesses are granted absolute immunity for their testimony during trials." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999) (quoting *Briscoe v. LaHue,* 460 U.S. 325 (1983)). And "[p]olice officers enjoy the same absolute immunity as lay witnesses for their testimony at trial." (*Id.*) But the mere fact an individual testified at trial does not bar all suits against them for actions undertaken outside the courtroom that concerned the same matter as the trial testimony. In determining absolute immunity against § 1983 actions, "Courts must look to "'the nature of the function performed, not the identity of the actor who performed it.'" *Id.* at 1282 (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).

Absolute immunity is given based on function, not status or title. Merely being a witness at trial does not immunize a police officer from claims against him for actions he took outside the courtroom concerning the matter about which he testified. Person has absolute immunity for his trial testimony, not his fabrication of evidence as a DNA analyst for the GBI. (Doc. 35 at 7). Pearson claims that "Moore's § 1983 claim against Pearson is based on the allegedly false testimony Pearson gave at trial" and not any "involvement in the initial investigation." (Doc. 43 at 3). However, Moore's amended complaint alleges "all of the evidence against Sedrick Moore was fabricated by the Law Enforcement Defendants, GBI and Defendant Pearson." (Doc. 17 ¶ 110). And it describes in detail the GBI policy that Pearson would have followed to fabricate said evidence. (*Id.* ¶¶ 51, 58-61). Therefore, at least some of Moore's complaint concerns Pearson's actions allegedly undertaken not during his testimony at trial. Moore's federal claims against Pearson may proceed only insofar as they concern actions not taken while testifying at trial. Plaintiff's federal law claims against Pearson are **DISMISSED**, in part.

Defendants argue that "Plaintiff misrepresents Pearson's trial testimony and the allegations against Pearson are false." (Doc. 43 at 4). These arguments go to the factual plausibility of the claims alleged. At the motion to dismiss stage, the Court "accept[s] the allegations in the complaint as true and constru[e]s them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Defendants' arguments about the truthfulness of the allegation are not relevant at the motion to dismiss stage. Such arguments are properly reserved for the factfinder at trial or possibly on a motion for summary judgment. Furthermore, these factual arguments concern Pearson's trial testimony, the claims regarding which the Court dismissed above. Therefore, the Court does not consider these factual arguments now.

Plaintiff argues that Pearson is not entitled to sovereign immunity or qualified immunity as to the federal law claims. (Doc. 35 at 8-9). Defendants do not assert sovereign immunity or qualified immunity as to the federal law claims against Pearson. Therefore, Moore's arguments on the matter are irrelevant and the Court will not address them at this time.

*3. State-law Claims*

As discussed above, states enjoy sovereign immunity from suit by citizens of that state. The doctrine of sovereign immunity is enshrined in the Georgia Constitution and "bars suits against the State and its employees in their official capacities unless a statute or the Constitution itself specifically waives that immunity." *State v. SASS Grp., LLC*, 315 Ga. 893, 893 (2023). Therefore, Moore's state law claims against GBI and Pearson can only proceed if Georgia has waived its sovereign immunity.

Moore sued under the Georgia Tort Claim Act, a waiver of state sovereign immunity. O.C.G.A. § 50-21-23. Defendants note that Moore failed to comply with the Act's ante litem notice, service, and certification requirements, sued the wrong defendant, and his claims are barred by the Act's intentional torts exception. (Doc. 29-1 at 10).

The Act requires plaintiffs to "name as a party defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually." O.C.G.A. § 50-21-25. As alleged, Pearson was a state employee acting under the color of law and in his individual capacity within the scope of his employment. (Doc. 17 ¶ 13). Plaintiff does not dispute this point. Therefore, GBI is the proper defendant, not Pearson. Moore's state tort claims against Pearson are **DISMISSED**.

As to Moore's state tort claims against the GBI, his failure to comply with the ante litem notice requirements bars the claims. O.C.G.A. § 50-21-26 requires a plaintiff to provide an ante litem notice within twelve months of the loss and attach to their complaint a copy of the notice along with a delivery receipt as exhibits. O.C.G.A. § 50-21-26(a)(4). Plaintiff did not attach the required items as exhibits in his complaint. (*See* Doc. 17). Plaintiff acknowledges this requirement and notes that he did not send the required notices to the State within the statutory time period required because he was unable to obtain representation during that time. (Doc. 35 at 12). Nor does Plaintiff contest the applicability of the ante litem notice requirements to a suit in federal court. (*See* Doc. 35) This procedural bar to Plaintiff's claims due to the inaccessibility of legal counsel is regrettable. Nonetheless, Plaintiff's state tort claims against GBI are procedurally barred and accordingly **DISMISSED**. The Court does not and need not reach Defendants' argument that Plaintiff's claims are barred by his failure to comply

with the Act's service and certification requirements and its intentional torts exception because the above discussed reasons bar his claims.

### III.   CONCLUSION

In sum, Plaintiff cannot sue the GBI under § 1983 because of state sovereign immunity. Plaintiff cannot sue Pearson under § 1983 for his testimony at trial, but can for other actions alleged. Plaintiff cannot sue Pearson under the Georgia Tort Claims Act because the Act did not abrogate state sovereign immunity as to state employees. While Plaintiff could sue the GBI under the Georgia Tort Claims Act, his failure to comply with the Act's procedural requirements bars his instant state tort claims.

Hence Defendants' Motion to Dismiss (Doc. 29) is **GRANTED**, in part, and **DENIED**, in part. Plaintiff's claims against GBI under 42 U.S.C. § 1983 are **DISMISSED**, without prejudice. His claims against Pearson under § 1983 as to Pearson's trial testimony are **DISMISSED**, with prejudice, while the rest remain pending. His state-law claims against Pearson and the GBI are **DISMISSED**, with prejudice. The lawsuit remains pending as to Moore's federal claims against Pearson, excluding those pertaining to his trial testimony.

**SO ORDERED**, this 6th day of February 2026.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATESDISTRICT COURT**