**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| SEDRICK MOORE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 7:25-CV-00133 (WLS) |
| | : | |
| JASON PEARSON, *et al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER**

This case arises from the wrongful conviction of Sedrick Moore for rape. Moore spent over twenty-three years in prison before the state court granted his Extraordinary Motion for New Trial, finding that a 2018 DNA test excluded Moore as a possible DNA match for the rapist and that witness Tyrone White lied multiple times during the investigation. Moore now sues Jason Pearson, a GBI DNA analyst, the GBI, officers James Harshbarger, Joseph Smith, and their estates, officer Tommy Raybon, the City of Moultrie, and Colquitt County.

The City of Moultrie moves to dismiss the lawsuit. (Doc. 28). After review, the Motion to Dismiss (Doc. 28) is granted in part, and denied in part. Because Plaintiff sufficiently alleged the requirements for a Section 1983 malicious prosecution claim and *Monell* liability for failure to train and acquiescence to constitutional violations, those claims against Moultrie may proceed. Because Plaintiff failed to comply with the state ante litem requirement, his state law claims against Moultrie for violation of a legal duty, negligent infliction of emotional distress, and negligence are **DISMISSED**, with prejudice, while his claims under state law for malicious prosecution and intentional infliction of emotional distress remain pending. Because claims for punitive damages against a governmental entity are forbidden under state and federal law, his punitive damages claim against Moultrie is **DISMISSED**, with prejudice.

I.    **RELEVANT PROCEDURAL BACKGROUND**

Plaintiff Sedrick Moore sued Pearson and the GBI in the United States District Court for the Northern District of Georgia under 42 U.S.C. § 1983, *Monell*, and Georgia state law for their role in the wrongful conviction of Moore. (Doc. 17). The City of Moultrie moved to

1

dismiss (Doc. 28), Plaintiff responded (Doc. 33), and Moultrie replied (Doc. 42). The United States District Court for the Northern District of Georgia transferred the case to this Court on October 20, 2025. (Doc. 48). Because the Motion to Dismiss is fully briefed, it is ripe for ruling.

## II.   **MOTION TO DISMISS**

The City of Moultrie moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiff's Complaint (Doc. 17). After discussing the standard of review and the allegations, the Court considers Moultrie's arguments in turn.

### A. Standard of Review

#### 1. *Rule 12(b)(6) Standard*

Fed. R. Civ. P. 12(b)(6) permits a party to move to dismiss a claim if a complaint fails to state a claim upon which relief can be granted. The Court should not grant a Rule 12(b)(6) motion to dismiss unless a plaintiff fails to plead enough facts to state a claim for relief that is plausible, and not merely conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[I]f the factual allegations are not 'enough to raise a right to relief above the speculative level[,]'" the Court should dismiss the complaint. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). In other words, the allegations "must possess enough heft to set forth a plausible entitlement to relief." *Id.* (quotation marks omitted).

The Court conducts its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The Court "make[s] reasonable inferences in plaintiff's favor, but [need not] draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quotation marks and citation omitted), *abrogated on other grounds by Mohamad v. Pal. Auth.*, 566 U.S. 449 (2012). Even though the Court accepts all allegations in a complaint as true, this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B. The Allegations

With these principles in mind, the Court turns to the allegations. On February 15, 1993, three men raped Pearlie McGee. (Doc. 17 ¶ 24). The investigation was led by Moultrie Police Department (MPD) Investigators and Police Officers and involved the GBI, which performed

DNA analysis for the case. (*Id.* ¶ 28). Defendant Harshbarger was the lead MPD investigator, Defendants Raybon and Smith[1] were MPD officers who assisted Harshbarger in the investigation, and Defendant Pearson was the GBI DNA analysis supervisor. (*Id.* ¶¶ 29–31).

Two days after being raped, McGee identified Tyrone White and Derrick Smith[2] using a school yearbook. (*Id.* ¶ 33). She never identified Sedrick Moore. (*Id.*) There was no physical evidence connecting Moore to the crime. (*Id.* ¶ 34). The Law Enforcement Defendants arrested and questioned White, who agreed to testify against other suspects in exchange for certain other charges being dropped. (*Id.* ¶ 35). Defendant Harshbarger wrote down that he agreed to suggest to his supervisor or DA that White should have charges dropped in exchange for his testimony against Kerry Robinson and Sedrick Moore. (*Id.* ¶ 37). A supervisor or policymaker at the City of Moultrie would have had actual knowledge about the plea deal, because the Law Enforcement Defendants lacked the authority to grant a plea deal on their own. (*Id.* ¶ 70). White named Moore and Kerry Robinson[3] as his accomplices, claiming that Derrick Smith, a man he was with before and after the crime, was not involved. (*Id.* ¶ 38). At trial, White contradicted McGee's testimony at least five times. (*Id.* ¶ 77). In exchange for his testimony, White's sentences ran concurrently, significantly reducing his prison time. (*Id.* ¶ 71).

A sexual assault kit was performed on McGee and DNA belonging to people other than her was found. (*Id.* ¶ 44). The Law Enforcement Defendants collected clothing from the crime scene; the GBI tested it, and found seminal fluid containing White's DNA. (*Id.* ¶¶ 45–46). From the sexual assault kit, the GBI DNA analysts collected thirteen alleles, eleven of which matched White's DNA. (*Id.* ¶¶ 48–49). Defendant Pearson compared the two unaccounted for alleles to Moore. (*Id.* ¶ 51). The results were "inconclusive," meaning Moore's DNA did not match the DNA collected from the sexual assault kit. (*Id.*) Despite this, Defendant Pearson testified at trial in the presence of the jury that Moore's DNA matched the sexual assault kit DNA. (*Id.* ¶ 52).

---

[1] Defendants Harshbarger, Raybon, and Smith are collectively referred to as the "Law Enforcement Defendants."

[2] Derrick Smith was arrested, placed in a juvenile facility, and ultimately let go. (*Id.* ¶ 39). Smith is related to Defendant Joseph Smith, one of the investigating police officers. (*Id.* ¶ 40). Smith's DNA was never tested. (*Id.* ¶ 41).

[3] White initially named Kerry Lewis but corrected himself and named Kerry Robinson and Moore. (*Id.* ¶ 68).

Despite inconclusive DNA testing results, Pearson further testified that "[a]dditional alleles that were present in the vaginal cervical swabs matched them as well." (*Id.* ¶¶ 53–54).

In 2002, the GBI followed a policy directing agents to use "suspect-centric" language, which means that analysis will favor not excluding suspects when the DNA result is inconclusive. (*Id.* ¶ 58). In practice, this meant that when a DNA test is either unclear or inconclusive, instead of excluding a suspect-defendant, the GBI would mark the result as "non-exclusion," ensuring the suspect-defendant is still included in the DNA results. (*Id.* ¶ 59). This policy allowed GBI analysts, such as Pearson, to use the terms "non-excluded" from DNA evidence and "matched" the DNA evidence interchangeably. (*Id.* ¶ 60). GBI policymakers and final decisionmakers had actual and constructive knowledge of the policy and its effects. (*Id.* ¶ 63).

Defendant Harshbarger and the other Law Enforcement Defendants fabricated a witness statement identifying Moore coming from McGee's house on the night of the rape and read it into evidence before the jury. (*Id.* ¶¶ 86–92). Moore was ultimately arrested six years after the rape, found guilty at trial where the Law Enforcement Defendants and Pearson presented fabricated and misleading evidence, and sentenced to seventy-five years in prison. (*Id.* ¶ 97).

## C. Law & Analysis

### 1. Section 1983 Claim for Malicious Prosecution

Turning to the merits, Moultrie moves to dismiss Plaintiff's Section 1983 claim for malicious prosecution, asserting that Plaintiff did not allege facts sufficient to establish liability on the part of the municipality. (Doc. 28-1 at 5). Specifically, Moultrie claims Plaintiff failed to allege facts showing a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. (*Id.* quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

"To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)). Where, as here, a plaintiff alleges federal malicious prosecution against a municipality, they must also show "that the county has a custom or practice of permitting it and that the county's custom or practice is the 'moving force [behind] the constitutional violation.'" *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (quoting *City of Canton,* 489 U.S. at 389).

4

Moultrie contests federal malicious prosecution liability in two ways: first, they assert Plaintiff does not establish the common law elements of malicious prosecution because there was probable cause to arrest him. (Doc. 28-1 at 6); (Doc. 42 at 12). Second, they state Plaintiff has not alleged facts specific to the City sufficient to establish that a custom or policy was the moving force behind the malicious prosecution. (*Id.* at 8). The Court addresses each argument in turn.

    *a.  Probable Cause*

The existence of probable cause is fatal to a malicious prosecution claim. *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008); *Wood* 323 F.3d 882. "Probable cause exists when 'the facts and circumstances within the officers' knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense.'" *Miller v. Harget*, 458 F.3d 1251, 1259 (11th Cir. 2006) (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)). "To show the absence of probable cause, [a plaintiff] bear[s] the burden of showing that no reasonably objective police officer would have perceived there to be probable cause for such an arrest." *Phillips v. Fla. Fish And Wildlife Conservation Comm'n*, 325 F. App'x 864, 865 (11th Cir. 2009).

Moultrie fails to establish a lack of probable cause. Moultrie asserts that White's testimony, Brown's statement, and DNA evidence implicated Plaintiff, providing sufficient probable cause. (Doc. 42 at 13). But Plaintiff's theory of the case is that the Law Enforcement Defendants elicited false testimony from White in exchange for a plea deal, possibly to protect Derrick Smith, a relative of one of the investigating police officers who the victim identified as the rapist. (Doc. 17). Moore supports this theory by noting that the victim first named Derrick Smith, who spent time in a juvenile facility before being let go. (*Id.* ¶ 39). And that White admitted he was with Derrick Smith before and after the crime. (*Id.* ¶ 42). And that White, immediately upon arrest, named Kerry Lewis as his accomplice before correcting himself and naming Kerry Robinson and Sedrick Moore. (*Id.* ¶ 68). Furthermore, Plaintiff alleges "evidence was fabricated" by law enforcement officers. (*Id.* ¶ 68). Specifically, the DNA evidence, as alleged, indicated Moore was not a match for the rapist. (*Id.* ¶ 51). And Plaintiff alleges the DNA analyst lied on the stand when he said there was a match. (*Id.* ¶¶ 51–54). Additionally, Plaintiff alleges that Brown's statement implicated Demarco Jackson, and Brown

failed to definitively pick Plaintiff out of a lineup. (*Id.* ¶¶ 86–89). Plaintiff alleges that, at trial, Brown was unable to identify Moore and testified that he did not make the statement implicating Moore. (*Id.* ¶ 90). These facts allege that every time evidence was obtained to implicate and establish probable cause against Moore, that evidence was knowingly fabricated by law enforcement. Therefore, the facts as alleged demonstrate a lack of probable cause to arrest Moore.

In their reply, Moultrie posits a bright-line rule that "when individuals are detained pursuant to legal process," meaning with a warrant, those individuals cannot bring a Fourth Amendment claim. (Doc. 42 at 13 (citing *Washington v. Durand*, 25 F.4th 891, 904 (11th Cir. 2022))). But in Moultrie's quote of the court in *Washington*, they omit the first essential part: "If an officer *fully and honestly places evidence before the magistrate, reasonably believing that there is probable cause*, those 'procedural steps . . . afford a shield against a Fourth Amendment claim.'" *Washington v. Howard*, 25 F.4th 891, 904 (11th Cir. 2022) (quoting *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019)) (emphasis added). As alleged, the officers fabricated the evidence they put before the magistrate. As alleged, the officers did so dishonestly. *Washington* does not stand for a bright-line rule that a warrant bars a federal malicious prosecution claim, and it cannot be read to bar the instant malicious prosecution claim.

The Court must make all reasonable inferences for Moore. It is reasonable to infer that, as alleged, the investigating officers knew that White was giving bad testimony in exchange for a plea deal and to protect Derrick Smith. And the Court infers officers knew that the DNA evidence was not a match, and Jones never identified Moore as the perpetrator. Inferring that the involved officers knew the existence of the scheme, no reasonably objective police officer would have perceived there to be probable cause. Thus, plaintiff sufficiently alleged a lack of probable cause for the purposes of a motion to dismiss.

   *b.   Custom or Policy as the Moving Force behind Malicious Prosecution*

Plaintiff sufficiently alleges a custom or policy was the moving force behind the malicious prosecution. As discussed above, Plaintiff must show the existence of a policy or custom attributable to the city was the moving force behind the malicious prosecution. *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 683 (1978). Plaintiff can do this in a few different ways. One option is to show the constitutional violation was caused by the act of a final policymaker.

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1291 (11th Cir. 2004). Policymaker liability can arise under a ratification theory "when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (quoting *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002)). Another option is to show a "pattern of similar constitutional violations." *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Connick v. Thompson*, 131 S.Ct. 1350 (2011)). That custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Id.* (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)). This requirement "prevents the imposition of liability based upon an isolated incident" and "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Id.* Moultrie asserts that Moore satisfied neither of these requirements. However, Moore sufficiently makes his showing of municipal liability under a policymaker theory through Moultrie's acquiescence. (Doc. 33 at 15). Because Moore does not assert a city custom[4] in the federal malicious prosecution context, the Court does not address it.

According to Moultrie, Plaintiff has neither alleged any act on the part of any final policymaker nor identified any final policymaker. (Doc. 28-1 at 7). Moultrie further claims that "Plaintiff lumps all defendants together" in his allegations and that his complaint should be dismissed on that basis alone. (*Id.* at 8). Both arguments fail to undermine Plaintiff's claim. Plaintiff stated that "Moultrie Policymakers and investigators fabricated evidence, manipulated witness testimony, and pursued Mr. Moore without probable cause." (Doc. 33 at 18). Indeed, Plaintiff alleges that Defendants "coerc[ed]" White to "implicate" him. (Doc. 17 ¶ 118). These

---

[4] When it comes to city custom, Parties occasionally muddle their arguments, often failing to distinguish between the different counts of the complaint. Out of fairness to all Parties, the Court will analyze the contexts separately, as required, but will consider all relevant arguments and facts raised in the briefing on the instant motion to dismiss, regardless of where in the brief they may appear. It is the Court's reading that Moore argues the existence of a custom for his *Monell* failure to train claim, but not his federal malicious prosecution claim.

are all facts specific to Moultrie. Defendants "lumping" argument fails because Plaintiff's count alleging federal malicious prosecution "incorporates by reference all the foregoing paragraphs." (*Id.* ¶ 117). In the foregoing paragraphs, Moore alleges "[a] supervisor or policymaker at the City of Moultrie would have actual knowledge about the suggested plea deal because Investigators . . . did not have authority to grant a plea deal on their own." (*Id.* ¶ 70). Plaintiff alleges that Moultrie officers coerced White into providing false testimony against Moore and that coercion was done using a plea deal, which could have only been made with the approval or acquiescence of a policymaker. Because of the instant posture, the Court must make all reasonable inferences for Moore. Therefore, the Court assumes that a policymaker knew about and approved or acquiesced to the plea deal. Moore's complaint sufficiently alleges a final policymaker's act and may proceed on that basis.

Moultrie asserts that Plaintiff does not identify any policy or practice on the part of the City that caused or was the moving force behind the alleged malicious prosecution. (Doc. 28-1 at 8). Moultrie further contends that "to show any custom or policy . . . Plaintiff would have to allege facts showing conduct of City officers in prior investigations or prosecutions similarly led to violations of Constitutional rights." (*Id.*) The Court does not address these arguments as to the malicious prosecution claim because Plaintiff has plausibly alleged his claim under a policymaker theory of liability.

*2.* Monell *Claims*

Plaintiff alleges a *Monell* claim in two ways: first under a failure to train theory and second under an acquiescence to unconstitutional acts theory. Both theories survive the motion to dismiss. Plaintiff can sustain these theories by either alleging an officially promulgated city policy or an unofficial custom or practice. *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). However, failure to train theories allow an alternative route to liability: "where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). Therefore, the Court must analyze Plaintiff's *Monell* claims separately for the failure to train theory and the acquiescence to unconstitutional acts theory.

8

a. *Failure to train*

To sustain a failure to train theory under *Monell*, Plaintiff must plausibly allege that the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989)). "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Id.* "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable." *Id.* Moore sufficiently alleges that Moultrie was on notice of its need to train and did not take any action.

Moultrie's primary argument against failure to train liability is that Moore does not identify any facts that demonstrate a history of *widespread* abuse that would have put the City on notice. (Doc. 28-1 at 12). Moultrie cites to *Wright v. Sheppard* for the assertion that a notice can only be shown by a "history of widespread prior abuse." 919 F.2d 665, 674 (11th Cir. 1990). This argument confuses the standard for deliberate indifference to a need to train with the standard for traditional Section 1983 failure to train liability.[5] In *Wright*, the Eleventh Circuit noted that in the absence of actual notice by a policymaker or the existence of widespread prior abuse, the district court did not err in granting a motion to dismiss. *Id.* The Eleventh Circuit did not hold that a pattern of abuse must be "widespread" in the deliberate indifference to a failure to train context. It noted that the absence of a widespread pattern may properly result in dismissal. The Eleventh Circuit has declined to find that a specific number or threshold of events constitutes a pattern sufficient for failure to train liability under *Monell*. Indeed, the Eleventh Circuit has acknowledged that in some cases a large number of events may be insufficient to put the municipality on notice. In *Brooks v. Scheib*, a large number of complaints against an officer were insufficient to put the municipality on notice because "the number of complaints bears no relation to their validity." 813 F.2d 1191, 1193 (11th Cir. 1987).

---

[5] Parties frequently confuse these similar but distinct theories. The Court attempts to clear up the distinction in its analysis.

What matters is whether the events were of such a nature or quality as to put the municipality on notice of the need to train. Therefore, the Court's job remains to assess whether the Plaintiff's facts alleging abuse were sufficient to put the municipality on notice.

Moore's facts alleged were sufficient to put Moultrie on notice of its need to train. Plaintiff alleged that over the course of over six years, officers presented false testimony, bargained for false testimony, fabricated a witness statement, testified falsely themselves, arrested him without probable cause, and did all the same to another defendant. (Doc. 33 at 8). Additionally, Plaintiff alleged that Moultrie policymakers, specifically the chief of police, had knowledge of these constitutional violations. (Doc. 17 ¶¶ 166, 169). Moore has plainly and specifically alleged both the existence of a pattern of constitutional violations and a policymaker's actual knowledge of it. The Court finds that the brazen nature of these alleged constitutional violations, occurring over several years in a high profile case and committed against two individuals, with the alleged knowledge of the chief of police are sufficient to sustain *Monell* liability for failure to train.

Moultrie's argument that Plaintiff's allegations constitute a single incident and are therefore insufficient is unpersuasive. (Doc. 28-1). Moultrie makes this argument in conjunction with its assertion that a pattern must be widespread. Again, this argument confuses *Monell* custom liability under a deliberate indifference to a failure to train theory with traditional Section 1983 failure to train liability. Regardless, the Court is unpersuaded that the constitutional violations Moore allegedly suffered constitute a single incident for notice purposes. Plaintiff alleged constitutional violations against him and another individual for over six years. The notice requirement exists to ensure the municipality is aware of the abuse and is not held liable for conduct it did not know about and had no reason to know about. Moore alleged multiple incidents over multiple years against multiple people. The allegations meet the notice requirement for *Monell* liability under a deliberate indifference to a failure to train theory. Moore's *Monell* claim may proceed under a deliberate indifference to a failure to train theory.

b. *Acquiescence to Constitutional Violations*

Under an acquiescence theory of *Monell* liability, Moore must show "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that

10

constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Moore can establish the existence of a custom or policy by identifying "either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). Defendant does not dispute that Moore's constitutional rights were violated. And Moore does not allege an officially promulgated county policy caused the violation of his constitutional rights. So the Court only addresses Moultrie's argument that Plaintiff has not sufficiently alleged an unofficial custom or practice shown through the repeated acts of a final policymaker. (Doc. 28-1 at 10). Moultrie argues that Plaintiff's allegations are conclusory and constitute a single incident, rendering them insufficient for a theory of *Monell* liability for having a custom of acquiescing to constitutional violations. The Court is unpersuaded by this argument.

In the custom of acquiescence context, the history of abuse alleged does need to be widespread to be sufficient. *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) ("To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." (citation modified)). "Demonstrating a single, isolated constitutional violation does not suffice to demonstrate a custom or practice." *Torres-Bonilla v. City of Sweetwater*, 805 F. App'x 839, 840 (11th Cir. 2020). Under this heightened standard, Moore's claims suffice, but just barely.

Moultrie argues that Plaintiff's allegations constitute a single incident. (Doc. 28-1). Moore's case raises an interesting question on this point. Taken separately, Moore alleges discrete constitutional violations that only occurred one or two times (officers only presented White's false testimony once, made the plea deal for false testimony once, fabricated Brown's statement once). Taken separately, these constitutional violations are one-offs, hardly constituting a practice and certainly not one that is widespread. But taken together, as Moore alleges, they are a custom of violating his constitutional rights in the pursuit of a conviction at

all costs in a high-profile, high-pressure case. Because Moore alleged these violations were not one-offs, but rather the elements of a scheme to obtain a wrongful conviction, they constitute a widespread custom.

Moore persuasively argues that multiple constitutional violations against a single person can constitute a pattern and cites to a series of *Monell* employment discrimination cases for support. (Doc. 33 at 9-10 (citing *Brown v. City of Fort Lauderdale*, 923 F.2d at 1481 (11th Cir. 1991); *Sharp v. City of Montgomery*, No. 2:19-cv-857, 2021 WL 5989104, 4 (M.D. Ala. Dec. 17, 2021); *Webb v. City of Venice*,  No. 8:19-cv-3045, 2020 WL 4785073, 2-3 (M.D. Fla. Aug. 18, 2020)). Together, these cases stand for the assertion that constitutional violations committed against one person over the course of years can constitute a pattern for *Monell* custom liability. While Moultrie objects to the use of employment cases for purposes of the instant case, they point to no case bifurcating *Monell's* pattern requirement between constitutional violations in the workplace and criminal investigations. Indeed, the employment context provides a helpful parallel because few criminal investigations span as many years as Moore's. The long-term nature of the investigation into Moore resulted in repeated contact with Moultrie officers over an extended period of time. And Moore experienced a pattern where consistently throughout this period and among multiple officers, his constitutional rights were allegedly violated. This kind of repeated contact of such a concentrated nature more closely resembles constitutional violations in the workplace than your garden-variety, short-term criminal investigation. And Moore's experience was not isolated: he alleges the same happened to Robinson. (Doc. 17 ¶ 166). Moore's claim, as alleged, just barely meets the widespread custom requirement for *Monell*. Because the constitutional violations occurred multiple times, over the course of years, against multiple people, the evidence, if produced, would support a finding of the existence of a widespread custom.

Moultrie argues that Plaintiff's allegations are conclusory and "regurgitate the elements for a claim under *Monell*." (Doc. 28-1 at 10). Indeed, Plaintiff's allegations are conclusory at times. (*See* Doc. 17 ¶ 175). And conclusory allegations are not entitled to the presumption of truth. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018). After the Court discards Moore's conclusory allegations, it is left with a detailed allegation of a custom of violating

Moore and Robinson's constitutional rights in pursuit of a conviction at all costs. As alleged, this custom caused the constitutional violations against Moore. (Doc. 17 ¶ 171). While Moore's argument is sometimes circular in nature, for the purposes of the instant review, it satisfies the requirements for *Monell* custom liability.

### 3. *State-law Claims*

Plaintiff's failure to comply with the procedural requirements of O.C.G.A. § 36-33-5 bars his claims for acts which were not intentional, but not his claims for intentional acts. O.C.G.A. § 36-33-5(b) requires plaintiffs seeking monetary damages from a municipality to present the claim in writing to the municipality within six months of the occurrence giving rise to the claim. In his Complaint, Plaintiff did not allege compliance with this requirement. (*See* Doc. 17). However, the ante litem requirement only applies to claims for acts which were not intentional. *West v. City of Albany*, 300 Ga. 743, 747 (2017). Parties agree on this point. (Doc. 42 at 14) ("Plaintiff argues that his claims are not subject to dismissal because they allege intentional acts that are not subject to the ante litem statue, and Plaintiff is correct in that regard."). Therefore, Plaintiff's claims alleging intentional acts may proceed, while his claims alleging acts which were not intentional fail. In other words, his state law claims for malicious prosecution and intentional infliction of emotional distress may proceed, while his state law claims for alleged violation of a legal duty, negligent infliction of emotional distress, and negligence are **DISMISSED**.

### 4. *Punitive Damages Claim*

Plaintiff does not oppose Moultrie's motion to dismiss the punitive damages claim. (Doc. 33 at 22). Both the Georgia Supreme Court and the United States Supreme Court have held punitive damages against a governmental entity are impermissible. *Metro. Atlanta Rapid Transit Auth. v. Boswell*, 261 Ga. 427 (1991); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). Therefore, Moore's punitive damages claim is **DISMISSED**.

## III.    CONCLUSION

To sum up, Plaintiff can proceed against Moultrie under Section 1983 for malicious prosecution and under *Monell* under both his theories: failure to train theory and his acquiescence to unconstitutional acts theory because he has sufficiently alleged the requirements for each. Plaintiff cannot proceed against Moultrie under state law for acts which

were not intentional because he did not allege compliance with the state's ante litem requirements. However, he can proceed against Moultrie under state law for intentional acts because the state ante litem requirements do not apply to claims for intentional acts. Plaintiff cannot recover punitive damages from Moultrie because such claims are barred by both the Georgia Supreme Court and the United States Supreme Court.

Hence Defendants' Motion to Dismiss (Doc. 28) is **GRANTED**, in part, and **DENIED**, in part. His claims against Moultrie under § 1983 for malicious prosecution and *Monell* for failure to train and acquiescence to unconstitutional acts remain pending. Plaintiff's claims against Moultrie under state law for violation of a legal duty, negligent infliction of emotional distress, and negligence and his claim for punitive damages are **DISMISSED**, with prejudice, while his claims under state law for malicious prosecution and intentional infliction of emotional distress remain pending.

**SO ORDERED**, this 23rd day of February 2026.

/s/ **W. Louis Sands**
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATESDISTRICT COURT**